Rex, J.,
dissenting. The only question in this case is ; Does the act of April 6, 1866, to provide for the valuation of lands included in new town plats, or in additions there'to, S'. & S. 762, apply to a subdivision into lots, of grounds within the corporate limits of a city, which at the preced *159 ing decennial valuation were valued as city property ? The mere statement of the question, it seems to me, furnishes its own solution. Neither the phrase “ laying out a town,” nor that of “laying out an addition to a.town or city,” as used in section 1 of the act, can, giving to the words employed their usual and ordinary meaning, be construed to apply to a subdivision of lots or grounds in a city or town. The language clearty implies the creation of a new corporation, or the enlargement of the territory of one already created, and can not, therefore, have been intended to apply to a change or modification of grounds already embraced in it.
Examples of the use of the phrases “ laying out a town,” and “ laying out an addition to a town or city,” as contra-distinguished from the phrase “ subdividing lots or grounds in a city or town,” are of frequent occurrence in the statutes of this state. Section 6 of the act of March 3, 1831, to provide for the recording of town plats, S. & C. 1482, directs how a proprietor of lots or grounds in a city or town, who desires to subdivide or lay out the same into lots for sale, shall proceed to effect that object, and declares the penalty that shall be imposed upon such proprietor for selling lots so subdivided, before the provisions of the section have been complied with; and section 9 of the same act directs the manner of proceeding by a proprietor of lands outside of a city or town, who desires to lay out a town or an addition to a town or city, and declares the penalty he shall be liable to for selling a lot in such town or addition before he has complied with the provisions of section 9. The penalty for selling lots in a subdivision of grounds in a city or town being $50, whilst that for selling lots in a new town, or addition to a town or city, is but $25.
Again, section 3 of the act of February 2, 1848, authorizing the numbering of any city, town, or borough in this state to be revised, S. & C. 1489, provides that any person who shall lay off lots, as an addition to any city or town, or who shall make a subdivision of any lots therein after such revision, shall number the lots in such addition, *160 or of such subdivision, on his plat, in regular consecutive numbers,, commencing with the next number after the highest number of lots on the revised plat of such city or town. ,
If the words, “laying out an addition to a town or city,”' as used in section 1, of the act of April 6, 1866, was intended by the general assembly, to apply to the subdivision of lots or grounds within the corporate limits of a city or town, as well as to lands outside the corporate limits of a city or town, laid out into lots as an addition thereto, it is clear, that such intention must be implied from the language of that act, and can not be inferred from the other-acts, above cited; for when we look to them, we find the implication to be very clear, that the intention was to use the words “ addition to a town or city,” in the act of April 6, 1866, in their usual and ordinary meaning.
In carrying out the constitutional provision of taxing the real and personal property of the- state, by a uniform rule, it became necessary for the general assembly, not only to provide for the listing, valuation, and equalization of the values of real and personal property; but also to provide means by which the values of lands thus equalized could, in cases of sale, be transferred, on the duplicate, to the purchaser; and hence we find, that contemporaneous with the passage of the act of April 5, 1859, for the assessment and taxation of property in this state, and for levying taxes-thereon according to its true value in money, ¡3. & C. 1438, an act was passed, prescribing the duties, of county auditors, S. & C. 96, by the 17th section of which, provision is made for the transfer, in cases of sale, to the purchaser, on the duplicate, of the land sold and of the value thereof, as fixed at the time prescribed for the valuation and equalization of the values of real estate, next preceding the date of such sale, whether the sale be made in tracts or lots as valued, or in parcels thereof. Where the-sale is of the entire tract or lot, the auditor is required to transfer the same, on the duplicate, to the purchaser, on the presentation of the deed ; but where the sale is of less *161 than the entire tract or lot, as charged on the duplicate, the auditor is required to transfer the same, if the seller and purchaser agree upon the amount of valuation to be transferred with the portion of the tract or lot sold; and if the seller and purchaser do not so agree, then the auditor is required, under the provisions of section 16 of the same act, to furnish a list of such lands or lots to the assessor, who is required to ascertain and report to the auditor, the proportion of the valuation of the original tract or lot to be transferred, with the portion or portions sold. Under these provisions, between the periods fixed by law for the listing, valuation, and equalization of values of real estate, the valuation of the original tract remains as fixed, by the decennial valuation, without regard to the number of parcels or lots into which it may have been subdivided, unless changed by the annual board of equalization.
The annual boards of equalization of cities of the first and second classes, have power, under the provisions of the statute, to equalize the value of the real and personal property, moneys, and credits of such cities; but the exercise of that power in relation to the value of the real estate of a city, is not, by the statute, made to depend upon the fact of the subdivision of any of the grounds within its limits,, into building lots.
Any cause which may operate to produce inequality in values, at any time after the decennial valuation, is sufficient to authorize the exercise of the power; but the power, under the statute, is to be exercised by the board of equalization, and not by the auditor and assessor. There is no statute in this state, by virtue of which, a county auditor is authorized to direct, or an assessor to make, a revaluation, between decennial periods, of lots or grounds in a city, listed for taxation ; and having shown, as I think conclusively, that the provisions of the act of April 6,1866, do not apply to a subdivision of grounds in a city into lots, I am of opinion that the action of the auditor in the premises, was without any authority of law, and that, therefore, *162 the judgment of the District Court ought to have been reversed.
Welch, J., dissented on substantially the same grounds.